**Saba S. MAHBOOB, Petitioner,**

v.

**DEPARTMENT OF the NAVY, Respondent.**

**No. 90–3342.**

United States Court of Appeals, Federal Circuit.

March 22, 1991.

Saba S. Mahboob, Rockville, Md., pro se.

John T. Stemplewicz, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for respondent. With him on the brief, were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Stephen J. McHale, Asst. Director. Also on the brief, was Pam Page, Office of the Gen. Counsel, Dept. of the Navy, of counsel.

Before NEWMAN and RADER, Circuit Judges, and SKELTON, Senior Circuit Judge.

SKELTON, Senior Circuit Judge.

On April 7, 1989, Dr. Saba S. Mahboob (petitioner or plaintiff), who has a Ph.D. in chemistry, was removed from her position as a medical technologist, GS–9, at the National Naval Medical Center for alleged failure to follow instructions, refusal to carry out an order, unauthorized release of official information, and unacceptable performance. She appealed the decision of the agency to the Merit Systems Protection Board (board) on May 1, 1989, alleging that the decision of the Navy to remove her was unjustified and based on discrimination on account of her Moslem religion, national origin (Islam), color, race, age and reprisal for filing several Equal Employment Opportunity (EEO) complaints against the agency. The board referred the case to an administrative judge (AJ) for disposition.

The AJ held a prehearing telephone conference on July 24, 1989, between the plaintiff and her attorney Mr. Gebhardt, who were in one office, and the agency's attorney Mr. Jacobson and the AJ, who were in a different office. The conversation was tape recorded and the tape was entered into the record, and later transcribed. The transcript is in the record on appeal. The plaintiff says that her attorney was walking back and forth in the room with the speaker phone and that she did not hear much of the conversation between him and Jacobson and the AJ. In any event, the agency contends that the plaintiff and the Navy made an oral settlement agreement of plaintiff's case during the telephone conference on the following terms: (1) the Navy would withdraw all adverse information in Dr. Mahboob's official personnel folder; (2) the Navy would reinstate her effective April 7, 1989; (3) she would be placed in an administrative leave with pay status through October 30, 1989; (4) she would be in a leave without pay status from October 31, 1989 through December 31, 1989; (5) all employment reference calls would be referred to Mr. Jacobson; (6) a letter of reference would be signed by a Navy official to be designated; (7) Dr. Mahboob would resign or retire, effective December 31, 1989, or she might apply for another position; (8) she would not apply for any positions serviced by the Consolidated Civilian Personnel Office ("CCPO"), Northwest; and (9) she would withdraw all complaints filed against the Navy and would never resurface this issue in any federal or district court, the Equal Employment Opportunity Commission ("EEOC") or the board. Plaintiff's attorney agreed to these settlement terms, but plaintiff says she did not agree.

The AJ ruled on July 27, 1989, that the parties had settled plaintiff's case in the telephone conference and dismissed plaintiff's appeal. Thereafter, the board on its own motion reopened the case on April 9, 1990, and issued an opinion and order dismissing plaintiff's case as settled. 44 M.S. P.R. 509 (MSPB 1990). The plaintiff then appealed her case to this court acting pro se. She filed a brief and made an oral argument when the case was heard by the court.

The central and controlling fact question in this case is whether the parties made a final oral settlement of plaintiff's case during the telephone conference. A settlement agreement is a contract. *Greco v. Army*, 852 F.2d 558, 566 (Fed.Cir.1988). Whether a contract has been made by the parties, or whether a contract exists between them, is decided by the trial official or court either as a question of fact, or as a question of law, or as a mixed question of fact and law, depending on the facts and circumstances in the case. This issue was decided in the instant case as a question of fact. In order to determine the correctness of this decision, we must examine all of the evidence, as well as the contentions of the parties.

The plaintiff denies that she made an oral settlement agreement in the telephone conference. She says that her attorney had been urging her for more than three weeks to make a settlement and finally she reluctantly agreed to consider the terms proposed by the Navy. No one told her that the telephone conference was intended to be a final settlement of her case, and she never agreed that the conference would be a final and binding settlement. She contends that the terms set forth by Jacobson for the Navy in the conference were merely proposals made by the agency for her consideration, and that if any settlement was to be made the terms would be contained in a later written agreement which she would be allowed to examine and which would not be binding until and unless it was signed by her and a representative of the Navy. She says further that her attorney had no authority without her consent to agree that the telephone conference was a settlement of her case, and that she had never given such consent.

The plaintiff insists that the transcript of the tape shows that it was the intention of the parties, as well as the AJ, that a final settlement agreement would be later reduced to writing and submitted to the parties for their approval and signatures, and that until and unless this was done there would be no settlement. For instance, at the beginning of the telephone conference the AJ stated:

> ... and then *when the parties get the final hard copy prepared and signed by all parties, they can forward that to me for inclusion in the record.*

Again, at the end of the conference the AJ said:

> In the meantime, *when the written agreement is finalized* as far as the language and semantics go *and all the signatures are on that,* just send it to me for inclusion in the record.

(emphasis supplied).

The plaintiff says the following colloquies between her attorney Gebhardt and the Navy's attorney Jacobson during the telephone conference show that there would be no settlement until and unless a settlement agreement was prepared in writing and signed by the parties.

JACOBSON: What we can do, we can put in there, [the settlement agreement] 'will not from the date of this *settlement agreement* apply for any positions serviced by this agency.'

GEBHARDT: Okay, Mr. Jacobson?

JACOBSON: Yes, sir.

GEBHARDT: All right.

JACOBSON: I was just telling the judge what we could do is we could write in there 'will not in the future apply for any positions serviced by this agency.'

GEBHARDT: Okay.

JACOBSON: Or we could say, 'from the date of this *settlement agreement,* agrees not to apply for any positions.'

GEBHARDT: Okay, I think we should also specify in the *settlement agreement* that ... and the facts should be doubly checked ... that her two pending applications do not need to be withdrawn and that the agency will take no prejudiced action on them.

JACOBSON: No, we don't need to put that in the *settlement agreement*..... We will agree that from the date of the *settlement agreement* she agrees not to file any future applications....

GEBHARDT: Yeah. Could you put them on a *list* so that we can be really clear about that too in the *settlement agreement?* You can put in an *attachment* in on....

JACOBSON: Okay. And *I will draft something up and send it to you, Judge Clancy.*

JUDGE CLANCY: Okay.

(emphasis supplied).

The most convincing evidence that the telephone conference was not a final settlement of plaintiff's case, and that a written settlement document signed by both parties was required, was the fact that on August 1, 1989, (seven days after the conference was held) the Navy's attorney Jacobson prepared such a written settlement agreement, signed it, and sent it to the plaintiff for her consideration and signature. She refused to sign it. Instead, she wrote the AJ on August 16, 1989, enclosing a copy of her alternative settlement terms and requesting that the proposed settlement terms be modified before August 31, 1989, and if not, she wished a hearing.

The writing of the Navy's proposed settlement agreement by Jacobson is significant because it indicates that the Navy, like the plaintiff, did not consider the telephone conference a final settlement of plaintiff's case. Jacobson's written proposal was also significant because of its contents. It contained various new terms of settlement that were not even mentioned in the telephone conference. Among these were the provisions that plaintiff would not file any other actions against the agency for any matters, incidents, or occurrences which may arise from the facts of her employment with the agency in either federal, state, or district court, EOC or the board; that there are no attorney fees payable by the agency; that plaintiff agrees to accept the action by the agency set forth above as full satisfaction and settlement of any and all claims arising from her removal from the agency; and that the fact that this settlement agreement has been entered into by the agency and appellant does not constitute an admission of error or default by either party to the removal of appellant nor does it constitute an admission of liability, fault or error on the part of the United States, Department of the Navy, National Naval Medical Center, its employees or its representatives.

Thus, it is at once apparent that Jacobson's written agreement is almost completely different from the terms discussed in the telephone conference. There is no doubt that the Navy intended that it, and not the telephone conference conversation, would be the settlement agreement of plaintiff's case. When the plaintiff would not sign it, the Navy then claimed that the oral telephone conference was a final settlement and no longer seeks to enforce Jacobson's written document as a settlement.

The Navy argues repeatedly in its brief that the Jacobson written document is a confirmation of the telephone conference. This argument is unpersuasive for at least two reasons. In the first place, the document does not even mention the telephone conference. In the next place, the document is different from the telephone conference discussion because of its new terms of settlement.

Finally, the following provisions in the Jacobson written document effectively forecloses the Navy's contention that the telephone oral conference was a final settlement of plaintiff's case:

That this agreement constitutes the full settlement between the parties. *There are no other agreements between the parties, either express or implied, oral or written.*

――――

*This writing constitutes the complete agreement of the parties.*

(emphasis supplied).

For the Appellant: For the Agency:

[Not signed] ———————————— Robert A. Jacobson [signed]
 Saba S. Mahboob Agency Representative

 Date ——————— Date 8–1–89

———————

These provisions are at least admissions against interest by the Navy which preclude it from successfully contending that there was an *oral* settlement by the parties of plaintiff's case (i.e. the oral telephone conference conversation).

After carefully considering the record, the briefs and oral arguments of the parties, we conclude that the facts are with the plaintiff, and that the oral telephone conference was not a final settlement of plaintiff's case, and the decision of the board to the contrary is not supported by substantial evidence and must be reversed.

The decision of the board is reversed and the case is remanded for disposition consistent with this opinion.

REVERSED AND REMANDED.